The first matter on the argument calendar is United States v. Bailey. Please. Good morning, Your Honor. May it please the Court, Jacob Lager for the appellant Mark Bailey.  First, whether the district court properly allowed Ms. Connie Morgan, a convicted but undisclosed defendant in the same case, to assert a Fifth Amendment privilege and refuse to testify on call by Mr. Bailey. And second, whether the district court clearly erred in applying a two-level upward adjustment to Mr. Bailey's sentence based on an application of Rule 3B1.1c. Looking first at the Fifth Amendment questions, there's no dispute here about the well-settled principle that where a defendant's Sixth Amendment right to compulsory process comports with a co-defendant's right to a Fifth Amendment right against self-incrimination, that the Fifth Amendment rights triumph at all times. Here, however, that conflict could have been avoided via either of Mr. Bailey's motions for continuance or compelled immunity. And furthermore, there's a question as to whether or not the conflict truly existed at all as to whether or not Ms. Morgan actually waived her Fifth Amendment rights pursuant to the terms of a plea agreement. Looking first at Mr. Bailey's motion for continuance, is our position that the Court abused its discretion by not granting a continuance until such times after Ms. Morgan's sentencing would have removed any Fifth Amendment hurdles to her testimony in Mr. Bailey's case? At trial, the Court didn't look at any of the Sukumulican or her name is Becerra factors. It didn't look at whether or not the co-defendant would have been called. We believe she would have been, whether or not Ms. Morgan would have testified. We believe her testimony would have been compelled, and whether or not her testimony would have been favorable. It's our position that the dialogue that took place between the district court and Ms. Morgan's counsel confirmed that Ms. Morgan's secretive control over the company's cash flow would have prevented Mr. Bailey from having the requisite knowledge of the company's tax understatement. Why, in your view, would it have made any difference, given the fact, as district court indicated, that testimony with respect to her cash flow responsibilities or marital status would simply have been cumulative and therefore essentially irrelevant? With regards to the marital status, it most likely would have been cumulative. However, with regards to her control over the cash flow, while it was established at trial that she did exert some control over the cash flow of the business, the scope and extent of that control is not fully described. And we believe that her testimony would have cast further light on that subject and would have, in fact, shown Mr. Bailey did not have the requisite knowledge. Oh, we don't really know what she would have testified to, do we? No, we don't. We only have the dialogue between her counsel and the court, as well as the corroborating testimony of Mr. Guy Lafazno, a witness at trial, who also testified to the fact that Ms. Morgan controlled certain aspects of the cash flow and deposited certain cash deposits to a secretive safe she maintained. With regards to the Fifth Amendment waiver question, we believe that Ms. Morgan's plea agreement reflected the same standard terms that was found in most Eastern District plea agreements and, in fact, required her to waive any and all Fifth Amendment claims pursuant to the plea agreement itself. Now, was this for the benefit of the government, or could she claim it as to other witnesses or defendants? Well, we believe it was in favor of the entire case, all the subject matter that she would have been compelled to describe at trial. Now, if the government didn't object to her claiming it, could anybody else? Well, it is unusual for a third party to come in and make a claim as to the meaning of a contract when two parties, in this instance, when both contracting parties, would appear not to maintain that same interpretation. However, I think it's important to realize the unique position that the government is in with regards to this case. Usually, I believe the government would be enforcing that provision against the defendant and would not generally accede to the idea that the waiver in the plea agreement was narrow. I mean, had Ms. Morgan been called by the government at trial to bolster their case and she refused to testify then, would not the government have then used this waiver against her to say it was a broader waiver, in fact? Well, I think they would. But as to whether another party could enforce that, I'm not sure. With regards to the motion for compelled immunity, we believe that the Court clearly erred by not granting the defendant's motion. To compel immunity in a situation like this, one needs to show that the proffered testimony would be relevant. We believe, again, in reliance on the Court's dialogue with Mr. Hoffman and the witness testimony of Mr. Guy LaFosno clearly shows that, in fact, the testimony was relevant. In fact, district court went as far as to say, I believe, nobody here believes that it's not relevant. However, the second factor is that we have to show that the government distorted the fact-finding process. Now, the buzzwords that the law requires us to say is prosecutorial misconduct. Am I making a claim that the government acted in bad faith? No. However, the fact is that in April 2001, Ms. Morgan was convicted, but she wasn't sentenced until November of 2002, nearly 20 months later. The very fact that this sort of artificial Fifth Amendment extension existed provides, you know, creates a sort of potential for abuse that should not be ignored. For 20 months, Ms. Morgan's testimony, her knowledge was unavailable to the defense through their investigation and through their case. Was she still subject to prosecution for other years that she hadn't pleaded guilty to? At the time of the trial, no. I believe any further charges were time-barred by the statute of limitations. The relevant years in question that she would have been asked about ended in 1995. She filed her tax returns for 1995, April 15, 1996. Thus, the statute ended April 15, 2002. This case started, I believe, the trial began in May 1, 2002. Finally, with regards to the sentencing, Your Honors, the court clearly erred in applying a two-level upward adjustment based on Mr. Bailey's so-called supervisory role in the conduct. The court based its decision on two principles. One, that Mr. Bailey maintained a supervisory role in the business in general, and two, that Mr. Bailey's supervision of Mr. Alan Curtis's cash-structuring transactions provided the supervisory role required for this upward adjustment. The government itself concedes that Mr. Bailey's general supervisory role in the business is not a proper pillar upon which to rest this two-level upward adjustment. If you can't show that other employees in the business, in fact, are engaged in criminal activity, then his supervisory role as a businessman is improper to apply this adjustment. As to his supervision of Mr. Alan Curtis, we believe that the record clearly shows that they were equal participants in any cash-structuring transactions. Throughout all of Mr. Curtis's testimony, he refers to decisions that we made, meaning himself and Mr. Bailey, and, in fact, he approached Mr. Bailey with regards to his cash-structuring transactions. I'll reserve the rest of my time for rebuttal. Okay. Mr. McConville. Good morning. May it please the Court, I apologize for my congested tone. I've got a little bit of a cold here. The way the government perceives the arguments that counsel is making is a pattern of, you know, step by step. The first step is, was there – did witness Connie Morgan have a viable Fifth Amendment claim at the time that she was called to testify? The next step would be, assuming that viable Fifth Amendment claim, did the plea agreement have an effect on that Fifth Amendment claim? And assuming that the plea agreement had no effect on the Fifth Amendment claim, then should the Court have done something to remove the impediment to Ms. Morgan's testimony, that is, either grant a continuance or find that the government was acting to distort the fact-finding process? With regard to the first promise, whether or not Ms. Morgan had a viable Fifth Amendment claim, the Mitchell case states clearly that a Fifth Amendment claim remains intact until the time the person is sentenced. In this case, the witness Morgan had not been sentenced, and the proceeding in which they were attempting to elicit her testimony would have been something – a criminal action wherein her testimony could have been used against her. So the government believes that the Fifth Amendment right remained intact because the witness had not yet been sentenced, and sentencing is part of the criminal proceeding. So assuming that hurdle has been cleared – What are we to make of the length of the delay? Excuse me? What are we to make of the length of the delay in sentencing? Well, I don't know that the factor that the sentence has been delayed is a factor that the Court should consider. It's not clear from the record that the government was the one driving when the sentencing would occur. In fact, the record reflects that the pre-sentence report wasn't issued until sometime either just before or right during the trial. And so the pre-sentence report on which the district court would rely in order to sentence the defendant hadn't even been issued at the time of the trial. So the sentencing couldn't go forward unless the pre-sentence report had been issued. Well, the government could have agreed to postpone the trial until she was sentenced. Clearly, the government didn't want her sentenced until after this trial took place. Well, I think the facts, you know, it's standard government practice. We would not want a cooperating witness who would potentially testify to be sentenced beforehand. That's correct, Your Honor. Yeah. It's kind of a game the government plays. I don't, you know, I don't want to comment on whether or not the Court views it as a game. Obviously, we view it as a legitimate basis for enforcing the laws. So then the next issue, assuming a viable Fifth Amendment claim that's in place, is whether the plea agreement had any effect on that Fifth Amendment claim. With regard to counsel's first point in his brief that there's language in the plea agreement that says you waive any and all Fifth Amendment claim, well, that applies to Rule 11 colloquies. And it's in the government's interest, as it is in the Court's interest and the defendant's interest, that they understand that they have Fifth Amendment rights and that by pleading guilty, you are, in fact, incriminating yourself. And by incriminating yourself, you are waiving a Fifth Amendment right. I think it falls squarely within the Rule 11 colloquy, and that's what it says. In fact, the paragraph says, by pleading guilty, you waive the following rights. So counsel's seeking to make that broader, I don't believe, is a persuasive argument. Now, with regard to the terms of the agreement that says the defendant would have to testify if the government calls her to testify, you know, it's important to remember that the Court is not a party to the agreement. So assuming the government calls a witness to testify, that witness then testifies in such a way that would lead to additional sentencing factors that this witness could be sentenced under. Well, then that witness has inculpated herself. And even if the government says, Your Honor, we don't believe the Court should abide by the testimony that the Court heard because the government believes that it was made in the spirit of cooperation, the district court isn't obligated to follow the terms of the agreement. In fact, the agreement expressly states that the district court is not a party to the agreement. Now, but assuming, assuming that the Court finds that somehow that does affect a Fifth Amendment waiver, the answer, you know, is yes. Well, wouldn't the government then seek to enforce the terms by saying that there's been a broad Fifth Amendment waiver? The answer is no. The government wouldn't do that. What would happen in a case where the government would call the witness and the witness say, I don't want to abide by the terms of the agreement, you don't then hold up the agreement and say, You've waived all your Fifth Amendment rights. You actually say, The agreement's been breached. And then there's a hearing in front of the Court to determine whether or not the agreement's breaching was willful and knowingly. And then assuming that's the case, then the parties are back where they were to start with. It's not an effective prospective waiver of any and all Fifth Amendment claims so that the government can somehow say, You've now waived your rights. It then goes to an analysis of whether or not the agreement's been breached and whether the defendant goes back to where she was prior to deciding that she didn't want to abide by the terms of the agreement. So the government doesn't use this as a vehicle to say, You've waived all rights. It then says, Okay, well, let's go back and see what's supposed to happen, assuming there's been a breach of the agreement. So that being the analysis, then the question is, should the district court have relieved Ms. Morgan of the impediments that would have prevented her from testifying? The first impediment would have been to grant a continuance. And in this case, the district court found that the continuance, you know, first and foremost, that the testimony wouldn't necessarily have been relevant or helpful because there was no showing as to what this witness would have said. What we had were proffers by counsel who hadn't interviewed the witness to say, We believe the witness would say X. We anticipate the witness would say Y. There was no showing as to what this witness actually would say. The other prong of the analysis as to whether or not the district court abused its discretion is whether or not there was any prejudice to the defendant. And in this case, all categories about which the defendant said they wanted to inquire of Witness Morgan were covered. There would be cumulative evidence, at most, if Connie Morgan were permitted to testify. So we don't believe the defendant has shown the prongs necessary in order to establish that a continuance would be the way to go. And in addition, it was in the middle of trial. We had a jury. We had witnesses. We had the court. Everyone prepared to go forward. And because the defendant hadn't effected a subpoena on this person prior to trial or brought this issue to the court prior to trial, the defendant can't be perceived as being diligent in bringing this issue to the court when we're in the middle of trial and they say, We need a continuance. The court didn't abuse its discretion by failing to agree to a continuance motion. Now, then the last issue is whether or not there is a Fifth Amendment privilege that remains intact is whether the court should compel immunity. That is, whether the government somehow distorted the fact-finding process. And it's a two-pronged analysis. The first is whether or not the testimony would be relevant. Now, the cases that discuss this compelled immunity discuss whether or not the testimony would, in fact, if it's cumulative, it's not relevant. If it's speculative, it's not relevant. And that's exactly the case in this matter. It was speculation as to what the witness would say, and it was cumulative. So it doesn't satisfy the relevancy prong. Switching now to whether the government intentionally distorted the fact-finding process. In this case, the witness, Morgan, invoked her Fifth Amendment rights based on advice of counsel. So the government didn't force her to invoke her Fifth Amendment right. And then the next question is whether or not the government immunized one witness and then intentionally caused another witness who would contradict the testimony of the immunized witness to then not grant that witness immunity. And that's not what happened here. There's no allegation that the testimony of Alan Curtis would have directly contradicted the testimony of Connie Morgan, had she been called. In fact, what the evidence shows is Alan Curtis testified that in 1994, 1995, he had no dealings with Connie Morgan. In fact, he only dealt with the defendant. So there's no issue here with regards to compelled immunity because the government didn't distort the fact-finding process. The last issue in the brief is whether two-level enhancement is appropriate. And a review of the record indicates that district courts did not commit clear error because the evidence in the record is that the defendant gave $310,000 in cash to Curtis, that Curtis held the money in cash at the direction of the defendant, and that the defendant said that the SRO agreement that was in place said that the defendant could tell Curtis how it was that the money should be spent. And that's what the evidence shows. So he, by assisting Curtis, by assisting Bailey, was aiding and abetting the underreporting of the taxes because he kept the money in cash. Well, he might be aiding and abetting, but this is on account of supervising. Is that right? The enhancement was because he supervised the work of another person. This is a little unusual to say that the client is supervising the lawyer in that sense. Isn't that right? I don't know that the district court found that. In fact, the district court said in some cases a lawyer does, in fact, supervise the work of the client, but that's not the case here. This is the reverse. It's the client supervising the lawyer. Correct. And that's what the district court found, that this was a unique situation, and it was not clear error. That finding was not clear error. Thank you. All right. Thank you. Mr. Hager. Just a few points to make and rebuttal, Your Honor. First, with regards to the waiver argument, the Mitchell case is very distinguishable from the case at hand. The Mitchell case dealt with a plea agreement that – excuse me, a plea agreement that was completely oral and not pursuant to a written agreement. It certainly didn't have the extensive terms that went hand-in-hand with this agreement. In fact, counsel just acknowledged that, in fact, that this plea agreement didn't – took place outside the auspices of the court proceeding. In fact, it has a legal effect separate and apart from any waiver that would take place pursuant to a Rule 11 waiver or perhaps had the witness proffer testimony before a grand jury. With regards to the continuance argument and with regards to the compelled immunity, one of the common themes in the government's case is that this proffered testimony was both cumulative and speculative. I have trouble seeing how that's not an inherently conflicted position. How can the testimony be both cumulative and unsupportive at the same time? Isn't that – its cumulative nature, in fact, provides support for its relevancy. I mean, in any case, Your Honor, I believe that the dialogue between – again, between Mr. Hoffman, Ms. Morgan's counsel, and the district court, as well as the corroborating testimony of Mr. Lofosno, clearly provides the requisite support to show that this testimony would have been relevant for either inquiry for the compelled immunity or the continuance. And finally, with regards to the enhancement and basing it on this sort of aiding and abetting charge, supervising Mr. Critch's aiding and abetting, it's important to note that this supposed aiding and abetting charge was never reported in the pre-sentence report or the judge's tentative ruling. The defense would have never – has never been confronted with this issue before, and certainly not today. But you didn't – did you raise any argument that you received inadequate notice, or are you arguing on the merits that the enhancement should not be applied? No, Ms. Young. So that is your argument?  That you didn't receive notice of the enhancement? Well, yes. I mean, I was in trial counsel, so it's difficult to – I'm confining this in the record. It's difficult to, you know, bring a case on the merit, retry the case on the merits, based on an aiding and abetting charge. But I would say that in any case, you know, we should confine ourselves to what the two pillars of the district court case that offered the judgment are. Thank you. All right. Counsel, thank you both for your argument. The matter just argued will be submitted.
judges: B. Fletcher, Rymer, Graber